IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARYLYN CREER, et al.,

    Plaintiffs

v.

COMMUNICATIONS WORKERS OF
AMERICA,

    Defendant.

CIVIL ACTION NO.
02-AR-2916-S

**ENTERED**
**MAR 1 8 2004**

## MEMORANDUM OPINION

Before the court is the motion of defendant, Communications Workers of America ("CWA"), for summary judgement, and the motion of the four plaintiffs, Marylyn Creer ("Creer"), Joann Fowlkes ("Fowlkes"), Vanesa Ingram ("Ingram"), and Jonathan Gladden ("Gladden"), for leave to amend their complaint. Plaintiffs, current and/or former members of Local 3902, a local union affiliated with CWA, filed this action on November 27, 2002 alleging race discrimination and tortious interference with a business relationship. Both motions have been briefed, and the parties orally argued the motions on March 12, 2004 at the court's insistence.

### Background

CWA is a national labor organization or association representing employees of, *inter alia*, BellSouth Telecommunications ("BellSouth") for the purposes of collective bargaining. CWA is

1



headquartered in Washington, DC, and is organized into local unions chartered by the national union. Chartered local unions are required to conduct their affairs in accordance with the CWA Constitution, and also in accordance with local bylaws and rules that do not contravene the CWA Constitution. Plaintiffs are current and/or former employees of BellSouth and current and/or former members of Local 3902 and of CWA. Plaintiffs served as stewards of Local 3902 until April 30, 2002 when they were decertified as local stewards by the president and vice-president of Local 3902, Sonja Abbott ("Abbott") and Judy Cooley ("Cooley"), respectively. Abbott and Cooley did not consult with CWA in making their decision to decertify the plaintiffs as stewards. On May 21, 2002, plaintiffs filed separate charges with the EEOC alleging race discrimination in connection with their decertification. Each of the plaintiffs filed her or his charge against the "Communication Workers of America, Local 3902." On August 30, 2002, the EEOC issued each plaintiff a notice of right-to-sue Local 3902, and gave each plaintiff ninety days from the receipt of the right-to-sue to bring an action in a federal or state court. Plaintiffs filed the instant case against "Communication Workers of America" in this court on November 27, 2002 alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and tortious interference with a business relationship.

**Analysis**

2

CWA argues that summary judgment is due to be granted on the Title VII claim for two reasons: (1) plaintiffs are barred from bringing a claim against CWA because they did not name CWA in their EEOC charges, and (2) CWA is not liable for the actions of the chartered local. CWA also offers two reasons why summary judgment should be granted it on the tortious interference claim, (1) CWA is not liable for the actions of the chartered local, and (2) the claim is preempted by federal law. In responding to defendant's Rule 56 motion, plaintiffs filed their motion for leave to amend to their complaint, so as to substitute Local 3902 as the defendant. The court first turns to the motion for leave to amend and then will deal with CWA's motion for summary judgment.

*Motion for Leave to Amend*

Plaintiffs seek to bring Local 3902 into this action in two ways. First, they argue that, by virtue of the allegations in the complaint, Local 3902 has been in this case from the very beginning, and the amendment is nothing but a clarification of what should have been obvious already. Second, out of an abundance of caution plaintiffs ask leave to amend their complaint to name Local 3902 as the proper defendant if there was any misunderstanding about it.

In support of the first avenue for bringing Local 3902 into this action, plaintiffs cite the Ninth Circuit decision *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082 (9th Cir. 1983).

In *Rice,* the plaintiff, Earl Rice ("Rice"), was an employee of the Navy Commissary. *Id.* at 1083. The Navy terminated Rice for allegedly falsifying his employment application. *Id.* Rice, a black male, claimed that his termination was race related. *Id.* Rice, proceeding *pro se*, filed a complaint in federal court and named "Hamilton AFB Commissary" as his employer. *Id.* The district court dismissed the case, because Rice incorrectly named his employer as "Hamilton AFB Commissary" rather than its proper name, the "Secretary of the Navy." *Id.* at 1084. The Ninth Circuit reversed holding that "the question of whether a defendant is properly in a case is not resolved by merely reading the caption of a complaint. Rather, a party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant." *Id.* at 1085. The court believed that it was clear from the complaint that the Secretary of the Navy was the target. *Id.* The court reached its result because it did not think that Title VII's requirement of a proper defendant "was meant as a trap for the unwary *pro se* litigant." *Id.*

The instant case is easily distinguishable from *Rice*. First, plaintiffs in this case are not proceeding *pro se*. Considering plaintiffs' representation by capable counsel, the Ninth Circuit's concern about trapping an unwary *pro se* litigant is not applicable. Second, it is not at all clear from the complaint that plaintiffs meant to sue Local 3902. In the body of the complaint, each of the

4

plaintiffs is listed as "a member of the Communications Workers of America, Local 3092 [sic], and its national." Doc. 1 ¶¶ 7,8,9,10. In other words, plaintiffs recognized the existence of two separate union entities to which they belonged. Plaintiffs note that Abbott and Cooley acted as "President and Vice President of Communications Workers of American [sic], Local 3092 [sic]." Doc. 1 ¶ 11. Plaintiffs also allege that "Defendant CWA, through its officers and agents engaged in other activities calculated to have a detrimental affect on Plaintiffs' status with the union...." Doc. 1 ¶ 15. The allegations in the body of the complaint indicate that plaintiffs fully understood the distinction between CWA, the international union, and Local 3902. This stands in contrast to *Rice*, where the plaintiff simply mislabeled his employer.

Plaintiffs' back-up motion for belated leave to amend their complaint to name Local 3902 as the defendant, calls for a different analysis. Amended pleadings are governed by Rule 15, Federal Rules of Civil Procedure. After a responsive pleading has been filed, a party may amend its complaint "only by leave of court or by written consent of the adverse party...." Rule 15(a), F.R.Civ.P. "District courts have broad discretion to grant or deny leave to amend." *Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1405 (11th Cir. 1994). In the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to

5

the opposing party by virtue of allowance of the amendment, [or] futility of amendment," leave to amend should be "freely given." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962). In the instant case, an amendment to add or substitute Local 3902 would be futile as to the Title VII claim unless the amendment relates back to the date of the original complaint. The amendment would be futile, because the time for bringing a Title VII claim after receiving the right-to-sue letter has long since passed.

The relation back of amendments is governed by Rule 15(c). That rule provides:

> **(c) Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when
> **(1)** relation back is permitted by the law that provides the statute of limitations applicable to the action, or
> **(2)** the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
> **(3)** the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Rule 15(c)(3) is applicable in the instant case because plaintiffs would like to change the party being sued. For the court to grant

6

plaintiffs' proposed amendment, the five requirements set out in Rule 15(c)(3) must be satisfied. First, the claim asserted in the amended pleading must have resulted from the same conduct, transaction, or occurrence set forth in the original complaint. Second, the plaintiffs must have made a mistake in naming CWA as defendant. Third, Local 3902 must have received adequate notice so as not to be prejudiced by the delay. Fourth, Local 3902 must have known or should have known that it would have been sued in the original complaint but for plaintiffs' mistake. Fifth, the third and fourth factors must have been satisfied within the period prescribed for service of process.

CWA argues that plaintiffs did not make a mistake in naming CWA as the only defendant, so that Rule 15(c)(3) is not applicable. CWA cites *Powers v. Graff*, 148 F.3d 1223 (11th Cir. 1998), in support of this argument. In *Powers*, plaintiffs, a class of Florida citizens, sued defendant, a stock brokerage company, for wrongdoing in the company's sales of securities. *Id.* at 1225. After the applicable statute of limitations had run, plaintiffs attempted to amend their complaint to name certain "control persons" of the brokerage company as defendants. *Id.* Control persons are defined in the Securities and Exchange Act as those that control, directly or indirectly, "any person liable under any provision of [the Securities and Exchange Act]." 15 U.S.C. § 78t(a). Such persons can be held liable jointly and severally with

7

the persons whom they control. *Id.* The court first noted that Rule 15(c) governed whether or not such an amendment would be allowed. *Powers*, 148 F.3d at 1225. The court then explained that "[t]he purpose of Rule 15(c) is to permit amended complaints to relate back to original filings for statute of limitations purposes when the amended complaint is correcting a mistake about the identity of the defendant...'A potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose-- unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were.'" *Id.* at 1226-27 (quoting *Rendall-Speranza v. Nassim*, 107 F.3d 913, 918 (D.C. Cir. 1997)). Plaintiffs argued that, while they knew the identity of the control persons, they did not know that they might be defendants until later. *Id.* at 1227. The Eleventh Circuit held that the facts did not entitle defendants to relation back because Rule 15(c) does not apply to situations where the plaintiffs knew the identity of the potential defendant but not of its responsibility for the alleged harm. *Id.*

As in *Powers,* plaintiffs in the instant case knew the identity of Local 3902. As discussed previously, the complaint indicates that plaintiffs well knew the distinction between CWA and Local 3902. At oral argument, plaintiffs' counsel necessarily conceded that plaintiffs understood there was a distinction between Local 3902 and CWA. As will be discussed in more detail below,

plaintiffs' answers to CWA's interrogatories also indicated that plaintiffs understood there was a distinction between Local 3902 and CWA. Under these circumstances, the court concludes that plaintiffs naming of CWA rather than Local 3902 was not the result of a "mere slip of the pen." See *Powers*, 148 F.3d at 1227.

Because the court concludes that plaintiffs' decision to name CWA as the only defendant was not a mistake, an amendment to the complaint would not relate back under Rule 15(c)(3), and would be futile. The amendment would also be futile with respect to the tortious interference claim because plaintiffs have conceded the claim is preempted. This will be discussed in more detail below. Accordingly, the motion for leave to amend will be denied.

### *Title VII Claim*

CWA, the only defendant, argues that summary judgment is due to be granted it on the Title VII claim for two reasons. First, plaintiffs are barred from bringing a claim against CWA because they did not name CWA in their EEOC charges. The plaintiffs only named Local 3902. Second, CWA is not liable under *respondeat superior* principles for the actions of the chartered local.

The Eleventh Circuit has held that "[o]rdinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action." *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994). The purpose of this requirement is to notify the charged party of the allegations, and to allow the party to

participate in the investigation and reconciliation processes. *Id*. However, this requirement is liberally construed, and where the purposes of Title VII have been fulfilled, "a party unnamed in the EEOC charge may be subjected to the jurisdiction of federal courts." *Id*. at 1358-59. In determining whether the purposes of Title VII have been fulfilled, courts look to the following factors:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

*Id*. CWA argues that, based on these factors, the purposes of Title VII have not been fulfilled in this case. First, CWA and Local 3902 have separate interests in this case. Plaintiffs' Title VII claim deals exclusively with the operation of Local 3902 and the interaction between the plaintiffs and Local 3902's officers. Second, plaintiffs knew CWA's name and address at the time of the filing of EEOC charges. Third, CWA argues that "there is no evidence in the record that CWA was on notice as to the charges." Doc. 17 at 6. Fourth, CWA did not participate in the investigation or reconciliation processes.

Plaintiffs argue that CWA should have raised this issue

10

earlier. On December 27, 2002, CWA asserted failure to exhaust administrative remedies as an affirmative defense in its answer. It is unclear to this court why CWA waited almost a year to file its Rule 56 motion asserting failure to exhaust. However, that delay did not constitute a waiver of CWA's right to assert plaintiffs' failure to exhaust in its motion for summary judgment.

Even if the court were to conclude that CWA waived its administrative exhaustion defense, CWA's Rule 56 motion would be granted because CWA is not liable for the alleged actions of Local 3902 in this case. An international union can be held liable for the discriminatory practices of a local union if the international union has a "sufficient connection" with the practices of the local union. *See Myers v. Gilman Paper Corp.*, 544 F.2d 837, 851 (5th Cir. 1977).[1] The D.C. Circuit has explained that the "sufficient connection" test is not meaningfully different than common law agency principles. *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395 (D.C. Cir. 1988). To be held liable under such principles, the "plaintiff must adduce specific evidence that the international 'instigated, supported, ratified, or encouraged'" the actions of the local. *Id.* at 1422 (quoting *Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 218, 100 S.Ct. 410, 414 (1979)).

---

[1] The Eleventh Circuit is bound by decisions made by the former Fifth Circuit before October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

CWA argues that it did not have a "sufficient connection" with the alleged discriminatory practices of Local 3902, and, therefore, cannot be held liable for them. CWA argues

> It is undisputed that Local 3902 President Sonja Abbott made the decision to decertify the Plaintiffs, pursuant to her authority as chief administrative and executive officer of the Local. Local 3902's day-to-day affairs, including hiring and firing of employees and selection of local union stewards, are managed by the Local's officers. Those officers are elected by Local 3902's membership. The Local maintains its own treasury, from which Local employees are paid and local stewards are reimbursed for "lost time." CWA has no involvement in the selection or decertification of Local 3902 stewards. In addition to the Plaintiffs, Ms. Abbott has decertified other local union stewards, and on all such occasions did so without either consulting CWA or seeking its approval.

Doc. 17 at 9-10 (citations omitted).

Plaintiffs dispute neither CWA's exposition of the law, nor its application of that law to the facts in this case. Instead, plaintiffs argue that CWA is taking the position that it is not the proper party, and say that this is an affirmative defense that was waived because it was not raised earlier. Plaintiffs cite *Zimmer v. United Dominion Indus., Inc.*, 193 F.R.D. 616 (W.D. Ark. 2000); *Barrett v. Qual-Med, Inc.*, 153 F.R.D. 653 (D. Colo. 1994); and *Am. Color & Chem. Corp. v. Tenneco Polymers, Inc.*, 918 F.Supp. 945 (D. S.C. 1995). In each of these cases, the defendant claimed that the plaintiff had sued the wrong corporate entity.

In *Zimmer*, the defendant was sued for manufacturing a defective heating unit. *Zimmer*, 193 F.R.D. at 617. After failing

12

to affirmatively plead that it was the wrong defendant in its answer to the complaint, the defendant moved for summary judgment claiming that it did not manufacture the heating unit. *Id.* at 618. The heating unit was actually manufactured by a division of one of the defendant's wholly owned subsidiaries. *Id.* The court found persuasive that the plaintiff made a good faith effort to discern the correct corporate entity to sue, and that the defendant misled the plaintiff as to the correct entity to sue. *Id.* at 619-20. The court held that the defendant "should not be allowed to prejudice the Plaintiff's claim by taking advantage of an error it helped to create," and that, under the circumstances, the defendant had an affirmative duty plead the wrong defendant defense. *Id.* at 620.

In *Barrett,* the defendant operated health maintenance organizations ("HMOs"). *Barrett,* 153 F.R.D. at 654. The plaintiffs worked for one of the HMOs operated by the defendant. *Id.* The plaintiffs erroneously sued the defendant for age discrimination rather than the HMO they actually worked for. *Id.* The defendant's answer to the complaint did not deny that it was the proper defendant, and, in fact, left the impression that it was the correct party to sue. *Id.* at 655. On the eve of trial, the defendant asserted, for the first time, that it was not the proper defendant. *Id.* The court held that defendant waived the "wrong defendant" defense by not raising it earlier in the litigation. *Id.*

In *Tenneco*, at the close of the plaintiff's case, the defendant moved for judgment as a matter of law pursuant to Rule 50, Federal Rules of Civil Procedure. *Tenneco*, 918 F.Supp. at 958 n.2. The defendant argued that it was not the proper defendant, because it was not a party to the agreement at issue in the case. *Id*. The court held that, in light of the defendant's "failure to raise the issue after three years of pleading and discovery and more than one full week of trial," it was estopped from asserting the defense. *Id*.

In the instant case, the "wrong defendant" defense does not apply. In its first set of interrogatories to plaintiffs, CWA asked plaintiffs whether they

> contend that CWA discriminated against you and/or tortiously interfered with a business relationship in the manner alleged in the Complaint, or do you contend that CWA Local 3902 discriminated against you and/or tortiously interfered with a business relationship in the manner alleged in the Complaint, or do you contend that both CWA and CWA Local 3902 discriminated against you and/or tortiously interfered with a business relationship in the manner alleged in the Complaint?

In response, plaintiffs objected to the interrogatory arguing that it was ambiguous and called for a legal conclusion as to the relationship between CWA and CWA Local 3902. Plaintiffs also said that

> On information and belief, [the decision to decertify the plaintiffs] was made locally...Plaintiff[s] further aver[] that...CWA acted through CWA Local 3902, through

14

agency or instrumentality.

The theory asserted in the interrogatory is a viable legal theory. As noted above, under the proper circumstances, an international union can be liable for the acts of its local affiliate. CWA has argued that those circumstances are not present in this case. It has not argued that CWA is the wrong defendant. The cases cited by plaintiffs do not apply in the instant case. The court agrees with CWA that, under these circumstances, it is not liable for the alleged discriminatory practices of Local 3902.

Whether the court bases its decision on plaintiffs' failure to exhaust administrative remedies or on the fact that CWA is not liable for Local 3902's actions, CWA's motion for summary judgment on the race discrimination claim is due to be granted.

*Tortious Interference with a Business Relationship*

CWA argues that the tortious interference claim is due to be dismissed for two reasons, (1) CWA cannot be held liable for the tortious acts of Local 3902, and (2) the claim is preempted by § 301 of the Labor-Management Relations Act. The tortious interference claim arises from the alleged actions of Local 3902 and its officers. The analysis set forth above regarding the liability of CWA for the actions of Local 3902 applies with equal force to the tortious interference claim.

CWA also argues that the tortious interference claim is

15

preempted by § 301 of the Labor-Management Relations Act. CWA argues that plaintiffs claim requires an interpretation or application of the collective bargaining agreement between BellSouth and CWA, and that § 301 preempts such state law claims. *See e.g., Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911 (1985). While it is unclear from the body of the complaint whether plaintiffs claim would require an interpretation or application of the collective bargaining agreement, plaintiffs conceded CWA's argument by failing to respond to it.

Both of the CWA's arguments are sufficient grounds to support its Rule 56 motion with respect to the tortious interference claim.

### Conclusion

By separate order, the court will grant CWA's motion for summary judgment and will deny plaintiffs' motion for leave to amend.

DONE this ___18th___ day of March, 2004.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE